UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| VANCE SOLMAN,<br>　　Plaintiff, | :<br>:  PRISONER ACTION NO.<br>:  3:15-cv-1610(JCH) |
| v. | :<br>: |
| E. CORL, et al.,<br>　　Defendants. | :  NOVEMBER 10, 2016<br>: |

**RULING ON MOTION FOR RECONSIDERATION (DOC. NO. 38)**

The plaintiff, Vance Solman ("Solman"), is incarcerated at the MacDougall-Walker Correctional Institution in Suffield, Connecticut ("MacDougall-Walker"). He initiated this action by filing a complaint under section 1983 of title 42 against Captain E. Corl, Industry Manager Peter Casey, Industry Supervisor Tom Morassini[1] and Industry Supervisor Spaar.[2]

**I.　Introduction**

On February 25, 2016, the court dismissed the claims for monetary damages against all defendants in their official capacities pursuant to section 1915A(b)(2) of title 28 and all claims against defendant Casey, the Fifth Amendment claims, the Fourteenth Amendment claims, the First Amendment retaliation claim against defendant Spaar, the First Amendment association claims, the Eighth Amendment claims, any claims asserted

---

[1] The court notes that Solman incorrectly spelled defendant Morassini's last name in the Complaint as Morrasini. See Waiver Service Summons (Doc. No. 9). Thus, from this point forward, the court will refer to defendant Morrasini as defendant Morassini.

[2] In the Complaint, Supervisor Spaar's name is listed as Sparr. In an Affidavit attached to Solman's Motion for Reconsideration, Supervisor Sparr is identified as Supervisor Cettina Spaar. See Mot. Recon (Doc. No. 38), Ex. 4. From this point forward, the court will refer to Supervisor Sparr as Supervisor Spaar.

1

or relief requested on behalf of Solman's wife or sons and all state law claims pursuant to section 1915A(b)(1) of title 28. See Initial Review Order (Doc. No. 7). The court concluded that the First Amendment retaliation claims against defendants Corl and Morassini in their individual and official capacities would proceed. See id.

Discovery closed in this action on August 25, 2016. The deadline for filing motions for summary judgment is January 6, 2017. See Rul. Mot. Compel (Doc. No. 39).

Solman has filed a motion for reconsideration pursuant to Rule 60(b)(2) of the Federal Rules of Civil Procedure.[3] He asks the court to re-instate the retaliation claim against Supervisor Spaar based on evidence that he recently received from the defendants that he claims demonstrates that Supervisor Spaar was responsible for terminating him from his position in the upholstery shop and knew that he had filed a legal action prior to his termination from the job.

---

[3] Although, Solman titles his Motion as one seeking reconsideration, the court does not construe it as having been filed pursuant to Rule 59(e), Fed. R. Civ. P. because a motion for reconsideration "must be filed no later than 28 days after judgment." Under this court's Local Rule 7(a), "[m]otions for Reconsideration shall be filed and served within fourteen (14) days of the filing of the decision or order from which relief is sought." D. Conn. L. Civ. R. 7(a).

The motion for reconsideration is dated October 20, 2016, and was received by the court on October 24, 2016. Because the court dismissed the claims against defendant Spaar on February 25, 2016, a motion for reconsideration under either Local Rule 7(a) or Federal Rule of Civil Procedure 59 (e) would be untimely.

## II.     Legal Standard

Rule 60(b) motions for relief from a judgment or order are generally not favored and will not be granted unless the moving party demonstrates the existence of "exceptional circumstances." Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (internal quotation marks and citation omitted). Rule 60(b)(2) of the Federal Rules of Civil Procedure provides that a court may "relieve a party . . . from a final judgment, order or proceeding for . . . (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)) . . . ." The standard under Rule 60(b)(2) is "onerous." United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 392 (2d Cir. 2001). To prevail on a motion for relief pursuant to Rule 60(b)(2), a movant must demonstrate that he was "justifiably ignorant" of the newly discovered evidence "despite due diligence" prior to the order of dismissal and that the new evidence was of "such importance that it probably would have changed the outcome." Id.

## III.    Discussion

With regard to defendant Spaar, Solman asserted the following allegations in the Complaint. On February 14, 2013, Solman began to work in the Correctional Enterprises of Connecticut upholstery shop at MacDougall-Walker. See Compl. (Doc. No. 1) at 9, ¶12. He understood that he must complete a ninety-day probationary period in order to be assigned to a permanent job in the upholstery shop. See id. at 11, ¶¶ 25-26.

At the time Solman began his probationary period, he was represented by counsel in a civil rights action against state correctional officers. See Solman v. Manzi, Case No. 3:10-cv-729(SRU). On April 5, 2013, the attorneys in Solman's civil action informed the

judge that they had reached a settlement agreement.  See id. (Doc. No. 110).  On April 10, 2013, Solman informed Supervisor Morassini that the case had settled.  See Compl. (Doc. No. 1) at 10, ¶ 22.

On May 20, 2013, Solman received a poor work evaluation issued by Supervisor Morassini.  See id. at 11, ¶ 25.  Supervisor Spaar signed off on the poor work report even though Solman claimed that she had previously informed him that she had been pleased with his work.  See id.  Officials extended Solman's probationary period for sixty days.  See id. ¶ 26.

On June 5, 2013, Supervisor Spaar allegedly informed Solman that his work performance was much better.  See id. ¶ 27.  On that same date, the attorneys who represented the defendants and Solman in his federal civil rights action signed a stipulation of dismissal pursuant to the settlement agreement and filed the stipulation with the court.  See Solman v. Manzi, Case No. 3:10-cv-729(SRU) (Doc. No. 112).

On June 18, 2013, Supervisor Morassini informed Solman that he was being fired from his position in the upholstery shop.  See Compl. (Doc. No. 1) at 11, ¶ 28.  On August 23, 2013, prison officials assigned Solman to "very coveted job" in the gymnasium at MacDougall/Walker.  See id. ¶ 30. Solman claimed that Supervisors Morassini and Spaar fired him from his job in the upholstery shop in retaliation for settling a civil rights action against the Department of Correction.  As indicated above, the court dismissed the retaliation claim against Supervisor Spaar and determined that Solman had asserted a plausible retaliation claim against Supervisor Morassini.[4]

---

[4] The allegations against Supervisor Morassini constituted direct and circumstantial evidence of a causal connection between Supervisor Morassini's involvement in the termination of Solman from his job and

4

Solman states that the Affidavits of Cettina Spaar and Linden Morassini that he received from counsel for defendants Morassini and Corl in August 2016 contain information that demonstrates that Supervisor Spaar's recommendation that he be terminated from his position in the upholstery shop as of June 18, 2013, was retaliatory. Solman offers no explanation as to why he could not have discovered the new facts relating to Supervisor Spaar at an earlier date or before he filed this action. When Solman filed this action, he was aware that Supervisor Spaar had issued him a poor performance evaluation in May 2013. See Compl., at 11. Even if Solman did not receive notice of the poor performance evaluation for the extended probationary period signed by Supervisor Spaar on June 18, 2013,[5] he does not assert that he made an effort to secure a copy of the evaluation or any other information regarding the recommendation for his termination, before July 14, 2016, when he served discovery requests on defendants Morassini and Corl.[6]

The court concludes that Solman did not engage in due diligence in order to determine whether Supervisor Spaar was involved in the June 18, 2013 recommendation to remove him from his job in the upholstery shop or that as of April 2013, she was aware that he was involved in a legal action.[7] See Sexton v. Karam, 648 F. App'x 108, 110 (2d

---

the litigation and settlement of Solman's lawsuit. See Compl., at 9-11.

[5] The evaluation form attached to Supervisor Spaar's Affidavit suggests that it was received by Solman, but he refused to sign it. See Mot. Recon. (Doc. No. 38), Ex. 4, Attach. 2.

[6] Solman served discovery requests on defendants Corl and Morassini on July 14, 2016 and received responses to those discovery requests, including affidavits and copies of emails on August 23, 2016. See Mot. Compel (Doc. No. 29) at 1.

[7] For the first time, in the Motion for Reconsideration, Solman suggests that he spoke to Supervisor Spaar about his lawsuit in April 2013. See Mot. Recon. (Doc. No. 38) at 2. If in fact Solman spoke to Supervisor Spaar in April 2013 about his lawsuit, he was certainly aware of the conversation before he filed

5

Cir. 2016)(affirming district court's conclusion that plaintiff "did not act with the diligence necessary for Rule 60(b)(2) relief . . . because he did not seek new documents until . . . three and a half months after . . . entry of judgment"). Even if the court were to assume that Solman was justifiably ignorant of the facts relating to Supervisor Spaar despite engaging in due diligence, there is no basis to permit him to add the new allegations against Supervisor Spaar because the allegations would not change the court's conclusion that Solman had failed to state a plausible claim of retaliation against Supervisor Spaar.

A complaint alleging retaliation must be supported by specific facts: conclusory statements are not sufficient. See Green v. McLauhlin, 480 Fed. Appx. 44, 46 (2d Cir. 2012). To state a retaliation claim, Solman must allege sufficient facts to plausibly support the inference that his conduct or speech was protected by the Constitution or federal law, prison officials took adverse action against him, and the protected conduct or speech was a substantial or motivating factor in the alleged retaliatory or adverse action by prison officials. See Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (citations and internal quotation marks omitted).

In the Ruling dismissing the claims against defendant Spaar, the court concluded that Solman had satisfied the first prong of the retaliation standard. Litigating and settling a lawsuit is protected speech. See Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003) (observing that protected conduct element of retaliation claim was met by plaintiff's "prosecution and settlement of a lawsuit and the filing of grievances"). The court also concluded that Solman had met the second prong of the retaliation standard. Upon

---

the Complaint, but chose not to include that fact in the Complaint. Thus, that information is not new.

reconsideration of the factual allegations against Supervisor Spaar, there is some question as to whether Solman's termination from his job constituted adverse action given that prison officials assigned him to a new, "very coveted" job in the gymnasium approximately two months after losing his job in the upholstery shop.  See Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003) (retaliatory act that does not "deter a similarly situated individual of ordinary firmness" from continuing to engage in protected activity is not adverse, but rather is "de minimus and therefore outside the ambit of constitutional protection") (citation and internal quotation marks omitted); Joseph v. Fischer, 900 F. Supp. 2d 320 (W.D.N.Y. 2012) (finding no allegation that the plaintiff's job change was an adverse act that could support a retaliation claim") (citing Brown v. Craven, 106 F. App'x 257, 258 (5th Cir. 2004) (prisoner's retaliation claim properly dismissed given absence of any assertion by plaintiff that new job was less desirable); Taylor v. Fischer, 841 F. Supp. 2d 734, 737-38 (W.D.N.Y. 2012) ("Prisoners have no right to any particular prison job, and the removal of plaintiff from the food service program was not so adverse to implicate any constitutional concerns, regardless of the defendants' motivation, particularly since plaintiff was placed into a different job thereafter.").

In concluding that Solman had not met the third causal connection prong of a retaliation claim against defendant Spaar, the court noted that he had not alleged that Supervisor Spaar was a defendant in his prior lawsuit or was otherwise aware that he was litigating a case against correctional officials or was involved in firing him from his position. In addition, Solman had not alleged that Supervisor Spaar had made any statements that

could be construed as demonstrating a retaliatory motive for Solman's termination. See Initial Review Order, (Doc. No. 7) at 9-10.

Solman states that the Affidavits of Cettina Spaar and Linden Morassini, which he received from the defendants in August 2016, show a retaliatory motive for his termination from his position in the upholstery shop on the part of defendant Spaar. In determining whether there was a causal connection between Supervisor Spaar's alleged retaliatory conduct and the protected speech, under the third prong of the standard, the court considers whether Supervisor Spaar made any statements regarding her motivation in taking action against Solman, the temporal proximity between the protected activity and Supervisor Spaar's allegedly adverse action and whether there was a subsequent finding that the adverse action was not justified or was improper. See Espinal v. Goord, 558 F.3d 119, 129 (2d Cir. 2009) ("causal connection that suggests retaliation" may be established if "protected activity was close in time to the adverse action"); Bennett, 343 F.3d at 138 (circumstantial evidence of retaliation "further supported by the fact that essentially all relevant adverse actions by DOCS officials were subsequently found to have been unjustified") (citation omitted). Cf. Colon v. Coughlin, 58 F.3d 865, 872-73 (2d Cir. 1995) (inmate's allegation of admission by prison official of the existence of a retaliatory scheme constituted direct evidence of retaliatory conduct).

Supervisor Spaar's Affidavit reflects that she was responsible for evaluating Solman's work performance and for the recommendation to terminate him from his job in the upholstery shop. See Mot. Recon. (Doc. No. 38), Ex. 4, Spaar Aff. ¶ 4. She states that in April 2013, she became aware that Solman had a legal case, but did not know what

the case was about. See id., Spaar Aff. ¶ 7. She approved Solman's requests for time off to attend to his case. See id. As of April 10, 2013, Solman was back at work. See id., Ex. 2, Email from Casey to Claudio.

On May 20, 2013, Supervisor Spaar issued Solman an unsatisfactory work evaluation for the period of February 14, 2013 to May 14, 2013 because his productivity, the quality of his work and his handling/care of tools were not satisfactory. See id., Spaar Aff. ¶ 8 & Attach. 1. There was no indication that the poor performance determination was based on Solman's missing work in April 2013 to attend to legal matters. See id. Supervisor Spaar decided to extend Solman's probationary period for sixty days to permit him to show improvement. See id.

On June 18, 2013, Supervisor Spaar recommended that Industries Manager Casey remove Solman from the upholstery position because he had failed to improve his job performance and keep track of his tools. See id., Spaar Aff. ¶ 9 & Attachs. 2-3. Specifically, the quality and quantity of work was not up to standards, he did not follow shop rules, he repeatedly told other workers how to perform their jobs, he asked other workers instead of the foreman for assistance and used excessive materials to complete each piece of furniture. See id. Industries Manager Casey approved the recommendation to terminate Solman from his position. See id., Attach. 4.

Although Solman asserts facts to show that, as of April 2013, Supervisor Spaar was aware that he was involved in a legal action, there are no facts or evidence to suggest that she was aware of the nature of the action, the parties involved in the action, or the fact that the parties had reported to the court that the case had settled as of April 5, 2013.


Supervisor Spaar was not a defendant in Solman's legal action. Instead of terminating him from his position on May 14, 2013, at the end of the ninety-day probationary period, Supervisor Spaar granted Solman an additional sixty day probationary period to improve his performance. Furthermore, there are no allegations that Supervisor Spaar was aware that the parties had signed a stipulation of dismissal on June 5, 2013. Thus, the court concludes there are insufficient facts to plausibly support an inference that the settlement or dismissal of Solman's lawsuit constituted a substantial factor in support of Supervisor Spaar's recommendation that Solman be terminated from his job on June 18, 2013 due to his failure to improve his job performance. See Faulk v. Fisher, 545 F. App'x 56, 59 (2d Cir. 2013) (no evidence suggesting defendants were "motivated by" plaintiff's grievance).

Because the new facts asserted by Solman do not state a plausible claim of retaliation against Supervisor Spaar, Solman has not shown that outcome would have been different if he had presented these facts in his Complaint. Thus, the Motion seeking reconsideration pursuant to Rule 60(b)(2) is denied, and the court will not permit Solman to amend the complaint to re-instate Supervisor Spaar as a defendant.

## IV.     Conclusion

The Motion for Reconsideration (Doc. No. 38) filed pursuant to Rule 60(b)(2), Fed. R. Civ. P. is **DENIED** and the court will not permit Solman to amend the complaint to re-instate Supervisor Spaar as a defendant.

**SO ORDERED**

Dated at New Haven, Connecticut this 10th day of November, 2016.


    /s/ Janet C. Hall
Janet C. Hall
United States District Judge